# 14-1260(L)

### 14-2597(CON)

## In the
## United States Court of Appeals
## For the Second Circuit



NYKCOOL A.B.,

*Plaintiff-Appellee,*

v.

TRUISFRUIT S.A.,

*Defendant-Appellant,*

PACIFIC INTERNATIONAL SERVICES, INC., PAN AMERICAN
TRADING COMPANY, INC., FRUIT IMPORTERS AMERICAS, INC.,
PACIFIC GROUP HOLDING, INC., ECUADORIAN LINE, INC.,
SOUTH PACIFIC SHIPPING CO. LTD., ALVARO FERNANDO
NOBOA PONTON, CARLOS AGUIRRE, CARLOS AHLSTROM,
EDWARD HICKEY and ROBERT KISSINGER,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

MAHONEY & KEANE LLP
*Attorneys for Defendant-Appellee*
40 Worth Street, Tenth Floor
New York, New York 10013
(212) 985-1422

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee, NYKCOOL A.B. ("NYKCool"), has no parent corporations, and no publicly owned company owns 10% or more of its stock.

## PRELIMINARY STATEMENT

Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York issued the Order from which appeal is taken upon the Report and Recommendation of Magistrate Judge Andrew J. Peck. The Order is not officially reported.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ........................................................1

COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW.................3

STATEMENT OF THE CASE................................................................3

COUNTER-STATEMENT OF FACTS AND PROCEDURAL HISTORY ............4

SUMMARY OF ARGUMENT ..............................................................16

STANDARD OF REVIEW ..................................................................17

ARGUMENT ..................................................................................20

POINT I.   SERVICE OF PROCESS UPON TRUISFRUIT WAS
           PROPERLY ACCOMPLISHED...........................................20

POINT II.   TRUISFRUIT HAD AMPLE "MINIMUM CONTACTS"
            WITH THE DISTRICT SO AS TO JUSTIFY
            THE EXERCISE OF PERSONAL JURISDICTION .........................25

POINT III.  THE ACTION  PLAINLY FELL WELL-WITHIN THE
            DISTRICT COURT'S SUBJECT MATTER
            JURISDICTION ..............................................................32

POINT IV.  THE DISTRICT COURT WAS READILY
           EMPOWERED TO ALLOW EXECUTION UPON
           TRUISFRUIT'S PROPERTY WITHIN NEW YORK......................36

CONCLUSION ................................................................................43

CERTIFICATE OF COMPLIANCE.......................................................44

# TABLE OF AUTHORITIES

*Page*

## Cases:

Aerofoil Technologies, AG v. Todaro,
No. 11 Civ. 9505, 20122012 WL 299959 (S.D.N.Y. Jan. 31, 2012) .......................... 21

Alexander v. Hill,
707 F.2d 780 (4th Cir. 1983) ................................................................. 38

Allstate Ins. Co. v. TMR Medibill Inc.,
00 Civ. 0002 (CPS), 2000 WL 34011895, 16 (E.D.N.Y. Jul. 13, 2000) .................... 41

Asahi Metal Indust. Co. v. Superior Court of California,
480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ................................. 25

Au Bon Pain Corp. v. Artect Inc.,
653 F.2d 61 (2d Cir. 1981) ................................................................. 18

Baltimore & Chicago Terminal Operating Co. v. Soo Line R.R. Co.,
646 F. Supp. 327 (N.D. Ill. 1986) ........................................................ 28

Bensuan Restaurant Corp. v. King,
126 F.3d 25 (2d Cir. 1997) ................................................................. 26

Berger v. Heckler,
771 F.2d 1556 (2d Cir. 1985) ............................................................... 36

Blue Whale Corp. v. Grand China Shipping Dev. Co.,
722 F.3d 488 (2d Cir. 2013) ............................................................... 24

Catlin v. United States,
324 U.S. 229, 65 S. Ct. 631, 89 L. Ed. 911 (1945) ...................................... 2

Chaiken v. VV Publishing Corp.,
119 F.3d 1018 (2d Cir.1997) ............................................................... 25

Chalsani v. State Bank of India,
93 F.3d 1300 (2d Cir. 1996) ............................................................... 17

Chen v. Jenna Lane, Inc.,
30 F. Supp. 2d 622 (S.D.N.Y. 1998)..............................................................18

Chevron Corp. v. Donziger,
768 F. Supp. 2d 581, 639-640 (S.D.N.Y. 2011)............................................20

China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash,
No. 96 Civ 9553, 1991 WL 126921 (S.D.N.Y. Mar. 9, 1999) ..................19

City of New York v. Mickalis Pawn Shop, LLC,
645 F.3d 114 (2d Cir. 2011) .........................................................................17

Class v. Norton,
376 F. Supp. 496, 501 (D. Conn. 1974)....................................................38

Cole v. Hills,
396 F. Supp. 1235 (D.D.C. 1975) .............................................................37

Combs v. Coal & Mineral Management Serv's, Inc.,
105 F.R.D. 472 (D.D.C. 1984) ....................................................................18

Compagnie D'Enterprises CFE, S.A. v. The Republic of Yemen,
180 F. Supp. 2d 12 (D.D.C. 2001) ...............................................................18

Computer Associates International, Inc. v. Altai, Inc.,
126 F.3d 365 (2d Cir. 1997) .........................................................................25

Daimler AG v. Bauman,
134 S. Ct. 746 (2014)....................................................................................16

Davis v. Musler,
713 F.2d 907 (2d Cir. 1983) .........................................................................18

Ehrenfeld v. Salim a Bin Mahfouz,
No. 04 Civ. 9641, 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) .................20

Energoinvest DD v. Democratic Republic of Congo,
355 F. Supp .2d 9 (D.D.C. 2004) ................................................................19

Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.,
413 F.3d 307, 2005 A.M.C. 1747 (2d Cir. 2005) .......................................... 34

Fortin v. Comm'r of the Mass. Dep't of Public Welfare,
692 F.2d 790 (1st Cir. 1982) .................................................................... 37

Gary W. v. Louisiana,
622 F.2d 804 (5th Cir. 1980) ................................................................... 37

Gates v. Collier,
616 F.2d 1268 (5th Cir. 1980)................................................................. 36

Girl Scouts of the United States of Am. v. Steir,
No. 03-9087, 2004 U.S. App. LEXIS 12515 (2d Cir. Jun. 24, 2004) ........................ 26

Glassman v. Glassman,
131 N.E.2d 721, 724 (N.Y. 1956) ............................................................. 41

Helicon Partners, LLC v. Kim's Provision Co.,
No. 12-01602, 2013 WL 1881744 (Bankr. S.D.N.Y. May 6, 2013)........................... 40

Hess v. Hess,
22 N.E. 956 (N.Y. 1889)....................................................................... 40

Hill v. City of New York,
45 F.3d 653 (2d Cir. 1995) ...................................................................... 1

Hoffritz Cutlery v. Amajac Ltd.,
763 F.2d 55 (2d Cir. 1985) ..................................................................... 26

Hutto v. Finney,
437 U.S. 678, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978).......................................... 36

In re GLG Life Tech Corp. Sec. Litig.,
287 F.R.D. 262 (S.D.N.Y. 2012)................................................................. 21

International Shoe Co. v. Washington,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 2d 95 (1945) ........................................25, 27

J & J Sports Prod's, Inc. v. Schrader Restaurant Corp.,
485 F. Supp. 2d 422 (S.D.N.Y. 2007)..........................................................18

Jardin Fashions of Paris v., Ltd. v. Flying Tiger Line, Inc.,
110 A.D.2d 587, 488 N.Y.S.2d 7 (1st Dep't 1985) .......................................28

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,
513 U.S. 527, 1995 A.M.C. 913 (1995).........................................................1

JSC Foreign Economic Ass'n Technostroyexport v. International Dev.
and Trade Serv's, Inc.,
295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..........................................................36

King v. Galluzzo Equip. & Excavating, Inc.,
No. 00 Civ. 6247, 2001 WL 1402996 (E.D.N.Y. Nov. 8, 2001).............22, 29

Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.,
No. 87 Civ. 1320, 79 B.R. 534, 1988 A.M.C. 1487 (S.D. N.Y. 1987) .........35

Kuruwa v. Meyers,
No. 11-4962, 521 Fed. Appx. 45, 47, 2013 WL 627733 (2d Cir. Feb. 21, 2013) ......17

Land Oil Resources v. Alexander & Alexander Serv's,
918 F.2d 1039 (2d Cir. 1990) .......................................................................26

Lawson v. Abrams,
863 F.2d 260 (2d Cir. 1988)...........................................................................2

Lemon v. Kurtzman,
441 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973)...............................38

Liquid Carriers Corp. v. American Marine,
375 F.2d 951 (2d Cir. 1967) .........................................................................26

Loew v. Kolb,
No. 03 Civ. 5064, 2003 WL 22077454 (S.D.N.Y. Sep. 8, 2003).................39

Madden v. Grain Elevator, Flour and Feed Mill Workers, Local 418,
334 F.2d 1014 (7th Cir. 1964) ...................................................37

McComb v. Jacksonville Paper  Co.,
336 U.S. 187, 93 L. Ed. 599, 69 S. Ct. 497 (1949)....................................37

Med-Span Shipping Serv's, Ltd. v. Jerry Jones Mack, Inc.,
442 F. Supp. 904 (S.D.N.Y. 1978)...................................................28

Miller v. Doniger,
28 A.D.2d 405, 814 N.Y.S.2d 141 (1st Dep't 2006) ..................................36

Mims v. Duval County School Bd.,
350 F. Supp. 553 (M.D. Fla. 1972) ............................................37

Moller S.S. Co. v. Woodville & Co.,
79 Civ. 3832, 1981 U.S. Dist. LEXIS 9602 (S.D.N.Y. Apr. 8, 1981) ........................28

Norfolk S. Ry. Co. v. Kirby,
125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) ................................................1, 34

Northern Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.,
249 U.S. 119, 39 S. Ct. 221, 63 L. Ed. 510 (1919) ......................................34

Nortowa Steel Sup. Co. v, Northern Indiana Steel Sup. Co.,
340 F.2d 934 (7th Cir. 1965) ............................................28

Nuance Comm's, Inc. v Abbyy Software House,
626 F.3d 1222 (Fed. Cir. 2010) ...................................................20

NYKCool A.B. v. Ecuadorian Lines, Inc.,
No. 13 Civ. 2730, 2014 WL 1408542 (2d Cir. Apr. 14, 2014) ..........................4, 16

NYKCool A.B. v. Pacific Fruit, Inc.,
No. 114246-cv, 507 Fed. Appx. 83, 2013 WL 163621,
2013 A.M.C. 2395 (2d Cir. Jan. 16, 2013) ...............................................4

NYKCool A.B. v. Pacific Fruit Inc.,
No. 10 Civ. 3867, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012)..............................4

NYKCool A.B. v. Pacific Int'l Serv's,
No. 12 Civ. 5754, 2012 WL 5462611 (S.D.N.Y. Nov. 9, 2012)..............................4

NYKCool A.B. v. Pacific Fruit Inc.,
10 Civ.3867, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011)........................................4

NYKCool A.B. v. Pac. Fruit Inc.,
10 Civ. 3867, 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010).............................4, 24

Perfect Fit Indus., Inc. v. Acme Quilting Co.,
673 F.2d 53 (2d Cir. 1982)....................................................................................37

Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp.,
633 F.2d 155 (9th Cir. 1980) ...............................................................................27

Pray v. Oughtred & Harrison,
98 Civ. 0599, 1999 U.S. Dist. LEXIS 5287 (S.D.N.Y. Mar. 25, 1999)......................28

Productos Mercantiles E Industriales, S.A. v. Faberge USA,
23 F.3d 41 (2d Cir. 1994). ..............................................................................33-34

R.H. Fulton v. Chicago, Rock Island & Pacific R.R. Co.,
481 F.2d 326 (8th Cir. 1973) ...............................................................................27

Realuyo v. Abrille,
No. 03-7808, 2004 U.S. App. LEXIS 5771 (2d Cir. Mar. 29, 2004) ..........................26

Rinchey v. Dtryker,
28 N.Y. 45 (1863) ................................................................................................41

Rio Properties, Inc. v. Rio Int'l Interlink,
284 F.3d 1007 (9th Cir. 2002) .......................................................................20, 21

Rodriguez v. Swank,
496 F.2d 1110 (7th Cir. 1974) .............................................................................37

Rohm v. Haas,
103 F.R.D. 541 (S.D.N.Y. 1984)....................................................................... 19

Ronco Inc. v. Plastics, Inc.,
539 F. Supp. 391 (N.D. Ill. 1982)..................................................................... 28

Ross v. Thomas,
No. 09 Civ 5631 (SAS), 2011 WL 2207550, (S.D.N.Y. Jun. 6, 2011)...................... 38

RSM Production Corp. v. Fridman,
No. 06 Civ. 11512, 2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007)........................... 21

Ryan v. Brunswick Corp.,
No. 02 Civ 0133, 2002 WL 1628933 (W.D.N.Y. May 31, 2002)............................ 21

Sequa Corp. v. Gelmin,
No. 91 Civ 8675, 1995 WL 404726 (S.D.N.Y. Jul. 7, 1995) ...................................... 39

Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.,
98 F.3d 88 (2d Cir. 1999)............................................................................... 33

Solow v. Domestic Stone Erectors, Inc.,
269 A.D.2d 199, 703 N.Y.S.2d 94 (1st Dep't 2000) .................................................. 36

Spain v. Mountanos,
690 F.2d 742 (9th Cir. 1982) ............................................................................ 37

Stolt-Nielsen Transp. Group B.V. v. Edible Oil Trading Corp.,
No. 06 Civ. 0703, 2007 U.S. Dist. LEXIS 7408 (S.D.N.Y. Jan. 24, 2007) ............... 18

Swann v. Charlotte-Mecklenburg Bd. of Educ.,
402 U.S. 1, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971)............................................. 37

Swarna v. Al-Awadi,
2007 WL 2815605 (S.D.N.Y. Sep. 20, 2007) .................................................... 21

Tauza v. Susquehana Coal Co.,
200 N.Y. 259, 115 N.E. 915 (1917) ................................................................. 26

Theunissen v. Matthews,
935 F.2d 1454 (6th Cir. 1991) ............................................................... 27

Transfield ER Cape Ltd. v. Industrial Carriers, Inc.,
571 F.3d 221 (2d Cir. 2009) ............................................................. 22, 28

Triestman v. Albany County Sheriff Dep't,
No. 93 Civ. 1397, 1998 U.S. Dist. LEXIS 6578 (N.D.N.Y., Jan. 21, 1998) ............. 18

Wabtec Corp. v. Faively Transp. Malmo AB,
525 F.3d 135 (2d Cir. 2008) ................................................................. 2

Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.,
No. 07 Civ. 5798, 2007 U.S. Dist. LEXIS 74477 (Oct. 1, 2007) ................................. 34

Wilhelmsen Premier Marine Fuels AS v. Sa. Independent Liner Serv. Pty Ltd.,
No. 08 Civ. 8878, 2009 WL 666773 (S.D.N.Y. Mar. 6, 2009) ............................ 34-35

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,
933 F.2d 131 (2d Cir. 1991) ............................................................. 22, 28

Worldwide Carriers, Ltd. v. Aris S.S. Co.,
301 F. Supp. 64 (S.D.N.Y. 1968) ........................................................... 41

World-Wide Volkswagon Corp. v. Woodson,
444 U.S. 286, 100 S. Ct. 559, 62 L. Ed, 2d 490 (1980) .............................. 27

*Statutes and Rules:*

9 U.S.C. § 1 ..................................................................................................1

9 U.S.C. § 9 ................................................................................................32

9. U.S.C. § 10 ..............................................................................................32

9 U.S.C. § 11 ..............................................................................................32

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1333 ..........................................................................................1

Fed. R. App. P. 4 ..........................................................................................1

Fed. R. App. P. 32 ......................................................................................44

Fed. R. Civ. P. 4 ..............................................................................5, 8, 20, 21

Fed. R. Civ. P. 9(h) ......................................................................................1

Fed. R. Civ. P. 12 ..............................................................................1, 2, 19, 35

Fed. R. Civ. P. 55 ..........................................................................................8

Fed. R. Civ. P. 56 ........................................................................................35

Fed. R. Civ. P. 60 ..............................................................................2, 3, 8, 19, 35

Fed. R. Civ. P. 64 ..................................................................................38, 39

Fed. R. Civ. P. 65 ......................................................................................39

Fed. R. Civ. P. 69 ..................................................................................36, 39

N.Y. Bus. Corp. L. § 720 ................................................................ 36

N.Y. Debt. & Cred. L. § 273 ......................................................... 36

N.Y. Debt. & Cred. L. § 276 ......................................................... 36

N.Y. Debt. & Cred. L. § 278 ......................................................... 41

N.Y. Civ. Prac. L. & R. 302 ...................................................... 26, 27

N.Y. Civ. Prac. L. & R. 5228 ....................................................... 38

N.Y. Civ. Prac. L. & R. 5229 ....................................................... 39

N.Y. Civ. Prac. L. & R. 6201 ....................................................... 39

N.Y. Civ. Prac. L. & R. 6212 ....................................................... 39

## JURISDICTIONAL STATEMENT

The district court properly exercised subject matter jurisdiction over this case pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1333. NYKCool's claim falls under the Court's admiralty and maritime jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, and the federal maritime law governs this action. Norfolk S. Ry. Co. v. Kirby, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 1995 A.M.C. 913 (1995).

By virtue of the district court's final order and judgment, this Court has jurisdiction over the instant appeal with respect to the default judgment entered against Truisfruit. 28 U.S.C. § 1291. And the appeal appears to have been commenced within the time permitted by Rule 4 of the Rules of Appellate Procedure, as Notice of Appeal was filed within 30 days after receiving notice of the entry of the judgment. See, generally, Fed. R. App. P. 4; see also, A.272; A.631.

However, to the extent Truisfruit's second appeal also purports to concern the denial of Truisfruit's motion to dismiss the complaint or reverse disbursements made, (A.631), appellate subject matter would appear to be lacking. Standing alone, no appeal should immediately lie from denial of a Rule 12 motion. See, generally, Hill v. City of New York, 45 F.3d 653, 663-64 (2d Cir. 1995) (compiling

1

cases); <u>see also</u>, <u>Catlin v. United States</u>, 324 U.S. 229, 236, 65 S. Ct. 631, 89 L. Ed. 911 (1945); <u>Wabtec Corp. v. Faively Transp. Malmo AB</u>, 525 F.3d 135, 137-38 (2d Cir. 2008) ("The district court's denial of Wabtec's motion to dismiss for lack of jurisdiction does not constitute a final order that is appealable to this court because 'it allows the litigation to continue.'") (quoting <u>Lawson v. Abrams</u>, 863 F.2d 260, 262 (2d Cir. 1988)). As part of the second, now-consolidated appeal, Truisfruit hopes to "piggy-back" the denial of Truisfruit's Rule 12(b) and other aspects of the motion on to the denial of the Rule 60(B) aspects of the motion so as to obtain appellate review of them all. But final judgment was not reopened and should only bring up for potential review earlier non-final orders. The second consolidated appeal does not concern a *prior* denial of a Rule 12 motion brought up for appellate review by way of a subsequent final order. The Rule 12 application was made *after* the final judgment, and the district court has declined to reopen that final judgment.

2

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether service of process upon Truisfruit was validly accomplished.

2. Whether Truisfruit had "minimum contacts" with the district.

3. Whether the district court properly exercised subject matter jurisdiction over the controversy.

4. Whether attachment, garnishment, and execution on the judgment debtors' funds was justified.

## STATEMENT OF THE CASE

Truisfruit appeals from the district court's default judgment entered on March 18, 2014 against Truisfruit on NYKCool's corporate "alter-ego" and veil-piercing claims, (A.272), and also appeals from the district court's Order entered on July 15, 2014 denying Truisfruit's motion pursuant to Fed. R. Civ. Proc. 60(b) to vacate that judgment. (A.631).

3

## COUNTER-STATEMENT OF FACTS AND PROCEDURAL HISTORY

To avoid unnecessary repetition, for a fuller recitation of the pertinent facts established in this matter, the Court is respectfully referred to the district court's prior decisions in this and the related action, including, inter alia, their adopted Reports and Recommendations. See, inter alia, NYKCool A.B. v. Pacific Fruit Inc., No. 10 Civ. 3867 (LAK)(AJP), 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012); NYKCool A.B. v. Pacific Int'l Serv's, No. 12 Civ. 5754 (LAK)(AJP), 2012 WL 5462611 (S.D.N.Y. Nov. 9, 2012); NYKCool A.B. v. Pacific Fruit Inc., 10 Civ.3867, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011); NYKCool A.B. v. Pac. Fruit Inc., 10 Civ. 3867, 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010); see also, NYKCool A.B. v. Ecuadorian Lines, Inc., No. 13 Civ. 2730, 2014 WL 1408542 (2d Cir. Apr. 14, 2014) (summary order); NYKCool A.B. v. Pacific Fruit, Inc., No. 114246-cv, 507 Fed. Appx. 83, 2013 WL 163621, 2013 A.M.C. 2395 (2d Cir. Jan. 16, 2013) (summary Order).

NYKCool seeks satisfaction of judgment, inter alia, in the amount of $8,787,157.00, plus treble attorney's fees, interest and costs arising from a confirmed arbitration award and judgment in NYKCool's favor and against Truisfruit corporate alter-egos, the business and assets of which were fraudulently transferred to Truisfruit as successor-in-interest. (A.106).

4

By order dated September 30, 2013, NYKCool was afforded leave to file its Amended Complaint, adding Truisfruit as a party defendant, and to serve Truisfruit at its office in Ecuador via Fed. R. Civ. P. 4(h)(2) and 4(f). (A.98; A.106).

The motion underlying that order presented overwhelming evidence that Truisfruit merely functions as the latest Noboa-controlled alter-ego successor to the judgment debtors' exclusive rights to sell Bonita bananas in this country, and sought to obtain the same relief that has already been provided, and upon initial review upheld, by the district court as against the other defendants. See, generally, A.159 (citing prior findings; A.267). The Court will not that Truisfruit presents no argument to the contrary, and rather focuses its attack on jurisdiction.

And there really was no question that Truisfruit is just such another corporate shill, owned and run by Noboa from the same offices, and presently being used to evade the judgments while continuing the Bonita trade to the United States. Indeed, it had been openly acknowledged by the defendants' witnesses in the course of the discovery which has gone forward since the prior judgment and temporary restraining order were entered. See, District Court Docket Entry 111, at Exhibit 6, pp. 16-17 ("Q. Who owns Truisfruit? A. As far as I understand, it's an affiliate of – from Ecuador . . . Q. Who's it affiliated with? A. A group of companies that I'm assuming relates to the farms. Q. And the farms are controlled by the Noboa family? A. From

5

my understanding."); <u>id.</u> at p. 82 ("Q. Correct, so whoever controlled that brand was the ultimate recipient of that money? Doesn't that follow? It's like two plus two. A. It – the fruit – Truisfruit is the fruit supplier. It's within the group, I believe."); <u>id.</u> at p. 85 ("Q. Are you aware that they found that the Bonita brand is owned by the Noboa group? A. I've heard that? Q. Do you agree with that? A. It's controlled by the Noboa family."); <u>id.</u> at Exhibit 7, p. 8 ("Q. Is Truisfruit located there? A. Yes. Q. What other companies associated with the Noboa organization are located there? A. There are many companies in that office building. I do not know the name of all of them."); <u>id.</u> at pp. 13-14 ("Q. What was the reason for the change in supplies of Bonita Bananas to the U.S. and perhaps elsewhere? A. I was not involved in these decisions. I do not know the reason why"); <u>id.</u> at pp. 15-16 ("Q. What about Alvaro Noboa, do you report to him? A. Yes. Why do you report to him? A. Mr. Noboa is the representative of the Noboa family and the interest in the companies. Q. They have a controlling interest in the company? A. I believe so yes. Q. That's true of Truisfruit; correct? A. I believe so, yes."); <u>id.</u> at p. 40 ("Q. Would you agree with this statement from the commission report, Paragraph 16, the Bonita brand is owned by the Noboa Group? A. Yes.")

Due to the defendants' ongoing efforts to fraudulently transfer the judgment debtors' assets, execution on the earlier judgments had proven inadequate. And, lest

6

the Court's equitable and statutory powers to ensure that its judgments were not inappropriately subverted be completely compromised, it was deemed absolutely imperative that the relief sought by way of the initial order to add Truisfruit as a party and prevent further asset flight be afforded without prior notice to the defendants and Truisfruit. Otherwise, immediate, irreparable loss and damage would have surely inured to NYKCool, yet again, before any new attachment issued.

As detailed in the district court's several Reports and Recommendations, every time the defendants had been afforded the opportunity, the Bonita business was assigned to another Noboa non-party company, which then asserted the court was without jurisdiction to compel the return of the dissipated corporate assets and otherwise set aside the fraudulent transfer. Despite prior judgments being twice affirmed by this Court, from Kelso and Pacific Fruit, to Fruit Imports and others, the business would pass before judgment could legally be executed. See, e.g., A.160-63. The former companies were left empty, and their officers seemed not to have a care for any future sanction on their conduct (they have, no doubt, been busily rendering themselves judgment-proof, as well).

In any event, Truisfruit is a foreign corporation located in Ecuador, and, as such, is not an infant, in the military, or an incompetent person, and, on October 3, 2013, service of process upon Truisfruit was properly accomplished by this district

7

court's Foreign Service Clerk via Fed. R. Civ. P 4(f), accordingly. (A.149; A.152).

Truisfruit failed to appear, plead or otherwise defend the action, and was thus found to be in default. (A.159; A.267). Nor did Truisfruit elect to bring a motion pursuant Rule 55 to set aside the default. But Truisfruit did file its first appeal from the default judgment that followed. (A.272). And, following Magistrate Judge Peck's thorough Report and Recommendation, Judge Kaplan denied Truisfruit's subsequent Rule 60(b) motion, not only "[i]n light of the pending appeal," but also "in the interest of judicial economy," indicating rather eloquently the futility of the post-judgment motion. Id.

In particular, however, the lie must be put to Truisfruit's remarkable factual suggestion that it lacked notice of the action against it. When Redi Fresh Produce, Inc. ("Redifresh"), Truisfruit's then broker of Bonita bananas in the New York metropolitan region, first appeared in the district court on August 21, 2013, represented by Robert O'Hare of O'Hare Parnagian LLP, Truisfruit was already fully cognizant of the concerned order of attachment and court proceedings. Indeed, Redifresh provided Truisfruit's legal department in Ecuador, and specifically Ms. Maddy Gallardo, Esq., a copy of the August 1, 2013 "Order for Issuance of Attachment and Garnishment" by e-mail from Michael Stamatis on August 7, 2013. (A.469).

8

Notably, Mr. Stamatis was the Redifresh representative who met with the Truisfruit representative in reaching the Redifresh/Truisfruit arrangement, with the former acting as the cargo broker in New York for the latter. Of course, this agreement essentially replaced the services formerly rendered by the defendant judgment debtor Fruit Importers of America, Inc. ("FIA"), an established alter-ego and judgment debtor of the original judgment debtor company, Pacific Fruit. The business between Redifresh and Truisfruit had been negotiated between Stamatis and Diogenes Villacis in July of 2013. Diogenes Villacis was previously identified as the President of defendant judgment debtor Kelso Enterprises, Ltd., which remains in contempt of the district court, and as the person from whom defendants Aguirre and Hickey were told by defendant Alvaro Noboa to take direction, and who, in turn, directed them to take instructions from Robert Kistinger. See, A.524; A.527; see also, A.423, n.4. Aguirre further testified that he was presently reporting to Villacis in his capacity as President of Fruit Importers of America. (A.545-46). Moreover, Maddie Gallardo, Esq., was the person identified by Carlos Aguirre as an attorney for the "Noboa Group" and who directed him not to produce documents ordered to be produced by defendant judgment debtor Pacific Fruit, Inc. (A.510-12).

Absent, also from the instant filings by Truisfruit is any disclosure that the

9

most visible architect of the Truisfruit agreement with Redifresh, Mr. Villacis, was also provided a copy of the Order of Attachment on August 5, 2013, two days earlier than Truisfruit's legal department. (A.460).

That Truisfruit was well-advised of the earliest concerned court proceedings is further evidenced by e-mail traffic dated August 28, 2013, with the same Maddy Gallardo at Truisfruit's legal department, and Stamatis requesting that the legal fees for Redifesh's original counsel, Mr. Robert O'Hare, Esq., be paid by Truisfruit. (A.580). Subsequently, on October 1, 2013, Mr. Stamatis testified that Truisfruit had agreed to pay all of Redifesh's legal expenses in relationship to this matter up to that time. (A.590). The actual payment for legal fees was made by defendant South Pacific Shipping Company, Ltd. to Redifresh, as the former's funds were not subject to attachment. (A.457).

Still more conspicuous in the recital of facts proffered by Truisfruit's motion is the absence of any mention of the deep involvement by former counsel for Truisfruit, Mr. Russell D. Morris, Esq., in prior proceedings. On August 23, 2013, Mr. Morris made comment on, and appears to offer direction couched as advice to, Mr. O'Hare about the termination of the "Cargo Handling Agreement" between NYKCool and Redifresh. (A.555). That e-mail leaves no question that Truisfruit was fully familiar at that time with all of the proceedings in Court about which it

10

now claims ignorance. So that there is no issue of Mr. Russell's role and knowledge, it should also be noted that, on September 28, 2013, Redifresh e-mailed Villacis a letter dated September 9, 2013 from "The Law Office of Russell D Morris" to Redifesh's then counsel, Messrs. Holland & Knight, to the attention of James Power, Esq., which addressed the attachment order at issue. (A.585). Mr. Morris's letter identifies Truisfruit as his client and also demonstrates that he had been closely following the proceedings, including reviewing briefs and other court filings. Mr. Morris continued to represent Truisfruit well-beyond the filing of the amended complaint naming Truisfruit and the motion for default judgment against Truisfruit, just as Villacis remains fully advised of events in this Court.

To further avoid any doubt on the issue of notice to Truisfruit, correspondence between Redifresh and Mr. Angel Punin Borja of Truisfruit discussed the business dealings between those two parties and district court proceedings which were preventing payment of monies by Redifresh to Truisfruit. (A.582).

Indeed, Redifresh is itself on record categorically refuting the lack of notice argument which Truisfruit continues to put forward as the lynchpin of its position that it has somehow been treated unfairly and confirming that Truisfruit was quite consciously just continuing Noboa's efforts to game the system through persistent

11

and altogether brazen acts of fraud upon the district court. (A.602; A.628)

And, of course, there is further evidence of notice, in that U.S. Mail service, in addition to the Clerk of the Court's service, was also made on Truisfruit by the plaintiff at the address shown on all its bills of lading and invoices, but oddly not the address its President sets forth under his Affidavit's signature. See, 12 Civ. 5754 (LAK) (AJP), Docket Entry No. 131, dated November 18, 2013. Additionally, and again uncommented-upon by Truisfruit, is the fact that the Court itself served a copy of its "Report and Recommendation" dated December 20, 2013 upon Truisfruit by Federal Express, with the written notice that the "parties shall have 14 days from the service of this Report to file written objections," and that failure to do so would waive objections for purposes of an appeal. (A.189).

So the lack-of-notice contention is just offensive, when Truisfruit was not only aware of the court proceedings in full, but paying for the legal representation of its agent/broker, Redifresh, while it had separate counsel representing its own interests wholly conversant with all of the facts and proceedings. Truisfruit chose to remain cloaked behind a stalking horse. Its claims of ignorance of the proceedings is thus demonstrably false, a fabrication the aim of which was plainly to dupe the district court. That type of activity is, regrettably, of a piece with the defendants' tactics throughout.

12

Equally disingenuous is the position that "Truisfruit does not provide any goods or services in the U.S." (A.84). Surprising then, that the attached funds placed into the district court's registry of approximately $1,800,000.00, pursuant to agreement with Redifresh, were, in the same court filing, claimed to be the rightful property of Truisfruit. (Memorandum of Truisfruit, Point IV (a) and (b)). Those funds represented only a few shiploads of the Bonita cargoes shipped to one terminal in the Port New York over the course of about one month. (A.589). Truisfruit, under a similar arrangement with Fruit Importers of America, had been sending vessel loads of cargo to Red Hook Terminal, in Brooklyn, New York since 2011. (A.552; A.554). As the district court had previously noted, the business of Pacific Fruit Inc. was in the range of approximately $60 million a year in revenue and Fruit Importers took over that business lock, stock, and barrel in 2011. From that time on, Truisfruit shipped virtually all of its Bonita bananas to Red Hook Terminal, New York, and received revenues in the tens of millions of dollars from sale of that cargo in New York. (A.421-22). Moreover, Truisfruit received funds directly from some retail purchasers. A copy of one such payment for fruit brought into New York is attached merely by way of example. (A.467). Incredibly, such direct funds transfers are not referred to in Truisfruit's papers itemizing its <u>de minimus</u> contacts with New York.

13

Furthermore, when the attached fruit could not be readily sold, Truisfruit arranged to re-export much of the cargo that had been had brought to New York, reducing the amount of proceeds which would normally have been received. (A.558). Nonetheless, the revenue paid to Redifresh for about one month's cargo was approximately $1.8 million. If one were to credit Truisfruit's statement that it received less than five percent of its revenue from New York activity, Truisfruit would necessarily be receiving income of over $1 billion every quarter from other regions of the world. No financial data supporting that position has been offered. Indeed, a completely meaningless, redacted document of no relevance has been proffered on the point of worldwide sales of Bonita bananas. However, common sense alone would dictate that the Bonita business is not producing income of upwards of $4 billion per annum. But even if it were, the tens of millions of dollars of activity in New York up to the time of suit surely compromises Truisfruit's position completely. In any event, the district court had the benefit of the affidavit of Hickey, the FIA Treasurer, dated August 7, 2013 and its Exhibit A which demonstrates that Truisfruit was receiving about one to two million dollars in revenue per month from the sale of bananas carried to Red Hook, Brooklyn, New York in 2013. (A.216).

In short, Truisfruit's rendition of the facts in this latest appeal is so rife with

14

omissions and misstatements as to be of little use to the Court, which, once again, is encouraged to simply look to the ample record made by the judges below to put gain an accurate sense of what truly, and rather remarkably, transpired here.

## SUMMARY OF ARGUMENT

Truisfruit presents nothing more than an altogether myopic, if not overtly disingenuous, view of the merits of the district court's holdings exercising personal jurisdiction over Truisfruit. There is simply nothing in the decision of <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746 (2014), which could possibly raise any issue on the highly detailed, record facts memorialized in NYKCool's pleadings, which have not only survived prior motions to dismiss for lack of particularity or failure to state a claim, but have provided the foundation for summary judgment rulings which have already been upheld by this Court. <u>See, e.g.</u>, <u>NYKCool A.B. v. Ecuadorian Lines, Inc.</u>, No. 13 Civ. 2730, 2014 WL 1408542 (2d Cir. Apr. 14, 2014) (summary order).

Nor were the alter-ego and fraudulent transfer allegations in any way the sole bases for finding ample "minimum contacts" and systematic business conduct with respect to Truisfruit, which admittedly sells millions of dollars of Bonita branded bananas to buyers here and admittedly had some $1,800,000.00 of its funds attached and garnished in this district as a result. <u>See, generally</u>, A.159; <u>see also</u>, A.267.

And there is no question that, while Truisfruit takes issue with the district court's allowance of service-by-mail in Ecuador, such service was effected on

16

multiple occasions. More importantly, however, Truisfruit was not only on actual notice of these proceedings from the inception, but was actively and intimately involved through its Ecuadorian counsel, Maddy Gallardo, Esq.; prior retained New York counsel, Russell D. Morris, Esq.; as well as Truisfruit-paid counsel for the garnishee Redi-Fresh Produce, at least since August of 2013. See, A.469; A.555; A.580; A.582; A.585; A.602; A.628. There can be no dispute Truisfruit was plainly represented by attorneys fully cognizant of all aspects this case, rendering the due process arguments which continue to be presented by Truisfruit's latest attorneys difficult to justify.

## STANDARD OF REVIEW

The entry of default judgment and denial of Truisfruit's motion to vacate it are both reviewed under an "abuse of discretion" standard. Kuruwa v. Meyers, No. 11-4962, 521 Fed. Appx. 45, 47, 2013 WL 627733 (2d Cir. Feb. 21, 2013) (summary order); City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 131-32 (2d Cir. 2011); Chalsani v. State Bank of India, 93 F.3d 1300, 1307 (2d Cir. 1996) ("Motions to vacate default judgments, like motions to reopen, are addressed to the broad discretion of the court where the default was taken and, because that court is in the best position to assess the credibility and motives of the moving party, we will not disturb its decision granting or denying relief unless the decision was clearly

17

wrong.") (citing Marziliano v. Heckler, 726 F.2d 151, 156 (2d Cir. 1984); Davis v. Musler, 713 F.2d 907, 912 (2d Cir. 1983)).

And "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" (A.166, at 8 n.5) (quoting Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, et al., Federal Practice and Procedure: Civil 3d § 2688, at 56-59 (3d ed. 1998))); accord, J & J Sports Prod's, Inc. v. Schrader Restaurant Corp., 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (citing Au Bon Pain Corp. v. Artect Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Default judgment may then be entered without inquest on damages, when, as here, the amount sought by the plaintiff is a sum certain or can otherwise be discerned by precise calculation. See, generally, Triestman v. Albany County Sheriff Dep't, No. 93 Civ. 1397(TJM)(GJD), 1998 U.S. Dist. LEXIS 6578 (N.D.N.Y., Jan. 21, 1998); Combs v. Coal & Mineral Management Serv's, Inc., 105 F.R.D. 472 (D.D.C. 1984)(no hearing is necessary if the amount of liability is capable of precise calculation, such as an amount appearing on the face of an instrument); see also, Stolt-Nielsen Transp. Group B.V. v. Edible Oil Trading Corp., No. 06 Civ 0703 (NRB), 2007 U.S. Dist. LEXIS 7408 (S.D.N.Y. Jan. 24, 2007) (petition to confirm award granted because requirements under FAA were met and defendant did not enter an appearance);

18

<u>Energoinvest DD v. Democratic Republic of Congo</u>, 355 F. Supp.2d 9 (D.D.C. 2004)(court granted petitioner's motion for default judgment and confirmation of arbitral award); <u>Compagnie D'Enterprises CFE, S.A. v. The Republic of Yemen</u>, 180 F. Supp. 2d 12 (D.D.C. 2001) (petitioner's request for entry of default and confirmation of foreign arbitration award against respondent granted).

Moreover, unlike a case where, due to insufficient service, actual notice was lacking, "[a]t this late point, when a defendant has had a default judgment entered against it, it must shoulder the burden of setting the judgment aside." <u>China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash</u>, No. 96 Civ. 9553 (PKL), 1991 WL 126921, *3 n.7 (S.D.N.Y. Mar. 9, 1999) (citing <u>Rohm v. Haas</u>, 103 F.R.D. 541, 544 (S.D.N.Y. 1984) ("[I]t is not unfair to place the burden on a defendant who has chosen to contest jurisdiction after judgment under Rule 60(b) rather than at the time of trial pursuant to Rule 12. This, of course, presumes that defendant was on notice at the time of the original proceedings.")).

19

## ARGUMENT

**POINT I.**     **SERVICE OF PROCESS UPON TRUISFRUIT WAS PROPERLY ACCOMPLISHED.**

The Federal Rules of Civil Procedure provide that service of process may be accomplished via postal channels or "other means" as the court orders, as long as not prohibited by international agreement. Fed. R. Civ. P. 4(f). And, as discussed by the district court's holdings with respect to Rule 4(f)(2), service in Ecuador by means other than letters rogatory was not foreclosed. (A.175) (compiling cases); <u>see also, generally</u>, <u>Chevron Corp. v. Donziger</u>, 768 F. Supp. 2d 581, 639-640 (S.D.N.Y. 2011), <u>remanded on other grounds</u>, 667 F.3d 232 (2d Cir. 2012) (holding Rule 4(f) service on Ecuadorean alien effective, as not barred by international agreement, and noting argument contra to be "frivolous") (citing <u>Nuance Comm's, Inc. v Abbyy Software House</u>, 626 F.3d 1222, 1239 (Fed. Cir. 2010); <u>Ehrenfeld v. Salim a Bin Mahfouz</u>, No. 04 Civ. 9641, 2005 WL 696769, *2 (S.D.N.Y. Mar. 23, 2005); <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1015 (9th Cir. 2002)).

Pre-approval of that service by mail, moreover, was duly sought and obtained from the district court pursuant to Rule (f)(3). (A.84). And prior courts have repeatedly emphasized that there is no requirement to demonstrate failed efforts to make service via different means or otherwise show any extraordinary need before Rule 4(f)(3) service may be permitted. Rather, "[t]he decision whether to allow

20

alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012); accord, RSM Production Corp. v. Fridman, No. 06 Civ. 11512, 2007 WL 2295907, at *1 (S.D.N.Y. Aug. 10, 2007). "As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).

"By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." Id. at 1015. "[S]ubsection (f)(3) is an independent basis for service of process and is neither 'extraordinary relief' nor a 'last resort' to be used only when parties are unable to effectuate service under subsections (f)(1) or (f)(2)." Ryan v. Brunswick Corp., No. 02 Civ. 0133, 2002 WL 1628933, *2 (W.D.N.Y. May 31, 2002); see also, Aerofoil Technologies, AG v. Todaro, No. 11 Civ. 9505, 20122012 WL 299959, *1 (S.D.N.Y. Jan. 31, 2012) ("no hierarchy among the subsections in Rule 4(f)"); accord, Swarna v. Al-Awadi, 2007 WL 2815605, *1 (S.D.N.Y. Sep. 20, 2007).

21

Additionally, and all else aside, the law is quite settled that alter-egos are treated as one entity for jurisdictional purposes. See, Transfield ER Cape Ltd. v. Industrial Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) (quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 142-43 (2d Cir. 1991)); see also id. ("This conclusion is consistent with well-established New York law that 'service on the alter ego of a corporation constitutes effective service on the corporation.") (quoting King v. Galluzzo Equip. & Excavating, Inc., No. 00 Civ. 6247, 2001 WL 1402996, *6 (E.D.N.Y. Nov. 8, 2001)).

Again, the district court has considered and addressed the very allegations now brought by Truisfruit so thoroughly, there is little to be done other than refer the Court back to its thorough analyses, which remain near-completely ignored in Truisfruit's instant papers. The sufficiency of service of process upon Truisfruit, its "minimum contacts" with this district, and the exercise of quasi-in rem jurisdiction over the attached res were all discussed in detail in the 31-page Report and Recommendation dated December 20, 2013 and adopted by this by the Order dated March 11, 2013, all over the opposition and objections interposed by Truisfruit's alter-ego defendants. (A.159; A.153).

Likewise, the clinging to an empty technicality, specifically, the claimed failure to serve a proposed form of order of judgment, already excused in the

22

granting of the subject judgment, was revealed to be no more than a sham in the face of the actual notice of the every aspect of the concerned long and intentionally ignored legal proceedings, including the service by the court of the December 20, 2013 Report and Recommendation, replete with the detailed relief recommended.

Perhaps most damning, however, if one were to ignore the fact that Truisfruit had its own counsel monitoring the case's progress and was paying for the legal representation of Redifresh, was the inability of Truisfruit to even allege in its motion papers lack of actual notice of the prior pleadings. That admission by silence, coupled with Truisfruit's now conceded interest in the more than $1.8 million of money from the sale of Bonita bananas out of New York, make the instant appeal one all the more clearly lodged in bad faith. Indeed, Truisfruit's President's elephantine tiptoeing past the tacit, but all too apparent, admission that he did receive all papers of concern in Ecuador, save for a proposed form of order, is enough to make the effort to claim lack of notice or due process a mock upon the court. Surely, that admission, crafted in the negative, essentially stating "Truisfruit did not receive in New York the papers addressed and sent to its office in Ecuador" was a clumsy sleight of hand not worthy of dignifying with comment, except to the extent it serves as confirmation all that was sent was well received by Truisfruit. Compare A.286 at ¶ 36 with id. at ¶ 37.

23

So too, the purportedly expert opinion on Ecuadorian law is more notable for what it failed to say than for what it did. It is the very same statement previously offered by Truisfruit's alter-ego defendants in the motion denied by Order dated May 13, 2014, in which, incidentally, the defendants were also yet again admonished, under threat of Rule 11 sanctions, to avoid still further motion practice on these matters. Thus, the alter-egos still "speak with one voice," albeit with a ventriloquists' flourish. See, A.440, n.12; see also, NYKCool A.B. v. Pacific Fruit Inc., 10 Civ. 3867, at 26-27, 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010). But regardless, simply advising the Court how Ecuadorian corporations are formed and how service of process is accomplished in Ecuador domestically did, and continues to do, nothing to advance Truisfruit's cause.

The opinion notably fails to address the underlying, albeit previously decided, question of corporate veil-piercing, which, in this case, is properly governed by the federal common law, in any event. See, generally, Blue Whale Corp. v. Grand China Shipping Dev. Co., 722 F.3d 488 (2d Cir. 2013).

Similarly, the opinion fails to discuss foreign service in Ecuador via postal channels, and, in particular, whether such service is barred by international treaty, a question which the earlier Report and Recommendation took great pains to consider, citing ample authorities. (A.159). At the very least, therefore, the opinion on

24

Ecuadorian law was and remains irrelevant with respect the issues involved here. However, one would have to nurse a "Nelson's eye" to fail to construe defendants' ongoing selective omission of testimony actually bearing upon the material areas of inquiry as anything other than a near-admission to the emptiness of Truisfruit's entire position.

## POINT II.  TRUISFRUIT HAD AMPLE "MINIMUM CONTACTS" WITH THE DISTRICT SO AS TO JUSTIFY THE EXERCISE OF PERSONAL JURISDICTION.

A federal court's exercise of <u>in personam</u> jurisdiction is proper if the defendant has sufficient contacts to satisfy the due process clause of the Fourteenth Amendment.  <u>See</u>, <u>Chaiken v. VV Publishing Corp.</u>, 119 F.3d 1018 (2d Cir.1997). Only "minimum contacts" with the forum state must be shown, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>International Shoe v. Washington</u>, 326 U.S. 310, 316-17, 66 S. Ct. 154, 158-59, 90 L. Ed. 2d 95 (1945); <u>see also</u>, <u>Asahi Metal Indust. Co. v. Superior Court of California</u>, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); <u>see also</u>, <u>Computer Associates International, Inc. v. Altai, Inc.</u>, 126 F.3d 365 (2d Cir. 1997) ("A court may exercise personal jurisdiction only over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being hailed into court there.  Essential to the exercise of personal jurisdiction in each

25

case is "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). As such, a foreign defendant "present" and "doing business" in New York is properly subject to the Court's jurisdiction here. Hoffritz Cutlery v. Amajac Ltd., 763 F.2d 55 (2d Cir. 1985); N.Y. Civ. Prac. L. & R. 302. Such business must "not be occasional or casual, but with a fair measure of permanence and continuity." Tauza v. Susquehana Coal Co., 200 N.Y. 259, 267, 115 N.E. 915 (1917); see also; Land Oil Resources v. Alexander & Alexander Serv's, 918 F.2d 1039, 1043 (2d Cir. 1990). A court will thus typically consider factors such as whether the foreign defendant regularly solicits business and maintains an office, employees, bank account, and property in New York. Liquid Carriers Corp. v. American Marine, 375 F.2d 951, 953 (2d Cir. 1967).

The foreign defendant may also be subject to New York long arm jurisdiction. See, Girl Scouts of the United States of Am. v. Steir, No. 03-9087, 2004 U.S. App. LEXIS 12515 (2d Cir. Jun.24, 2004); Realuyo v. Abrille, No. 03-7808, 2004 U.S. App. LEXIS 5771 (2d Cir. Mar. 29, 2004); Bensuan Restaurant Corp. v. King, 126 F.3d 25 (2d Cir. 1997); N.Y. Civ. Prac. L. & R. 302(a). In this regard, a court may consider whether the foreign domiciliary transacts business in New York and the cause of action arises from the in-state transaction, or whether the foreign actor

26

tortiously caused a reasonably foreseeable injury in New York.  Id.

New York's long arm statute permits the exercise of personal jurisdiction over any non-domiciliary who, in person or through an agent, "contracts anywhere to supply goods or services in the state" or commits a tortious act without the state foreseeably causing injury within the state.  N.Y. Civ. Prac. L. & R. 302(a).  For the purposes of long-arm jurisdiction, a loss or damage action against a carrier "sounds in tort."  R.H. Fulton v. Chicago, Rock Island & Pacific R.R. Co., 481 F.2d 326 (8th Cir. 1973).

Where jurisdiction is founded upon such a long arm statute, the 14th Amendment is fully satisfied, if the defendant should reasonably have anticipated being hailed into the forum court, by virtue of the defendant's involvement in placing goods in the stream of commerce, causing damages likely to be incurred in the foreign forum, or otherwise.  World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed, 2d 490, 501 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 2d 95 (1945); see also, Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991) (holding personal jurisdiction may be exercised over foreign shipper which contracted with United States carriers); Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp., 633 F.2d 155 (9th Cir. 1980) (holding personal jurisdiction may be exercised over shipper listed on

27

bill of lading); Pray v. Oughtred & Harrison, 98 Civ. 0599 (JGK), 1999 U.S. Dist. LEXIS 5287 (S.D.N.Y. Mar. 25, 1999) (holding personal jurisdiction may be exercised over foreign shipper with local agent); (Baltimore & Chicago Terminal Operating Co. v. Soo Line R.R. Co., 646 F. Supp. 327 (N.D. Ill. 1986) (citing Nortowa Steel Sup. Co. v, Northern Indiana Steel Sup. Co., 340 F.2d 934, 935 (7th Cir. 1965)); Ronco Inc. v. Plastics, Inc., 539 F. Supp. 391, 397 (N.D. Ill. 1982); Moller S.S. Co. v. Woodville & Co., 79 Civ. 3832 (JMC), 1981 U.S. Dist. LEXIS 9602, at *12 (S.D.N.Y. Apr. 8, 1981); Med-Span Shipping Serv's, Ltd. v. Jerry Jones Mack, Inc., 442 F. Supp. 904 (S.D.N.Y. 1978) (holding personal jurisdiction may be exercised over foreign shipper with local agent); Jardin Fashions of Paris v., Ltd. v. Flying Tiger Line, Inc., 110 A.D.2d 587, 488 N.Y.S.2d 7 (1st Dep't 1985) (finding "transaction of business" sufficient for New York long arm jurisdiction over Hong Kong freight forwarder with no New York contacts aside from strictly Hong Kong based participation in making shipping arrangements of cargo bound for New York).

And, once again, all of the above notwithstanding, the law is quite settled that alter-egos are treated as one entity for jurisdictional purposes. See, Transfield ER Cape Ltd. v. Industrial Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) (quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 142-43 (2d Cir. 1991)); see also id. ("This conclusion is consistent with well-

28

established New York law that 'service on the alter ego of a corporation constitutes effective service on the corporation.") (quoting <u>King v. Galluzzo Equip. & Excavating, Inc.</u>, No. 00 Civ. 6247, 2001 WL 1402996, *6 (E.D.N.Y. Nov. 8, 2001)).

The proposition that, Truisfruit, as yet another Noboa alter-ego, can take over as the supplier of Bonita bananas to New York and simply have buyers start wiring payments to Ecuador might remove Truisfruit from the Court's jurisdiction, even though it is still shipping millions of dollars of cargo to the Port of New York, just as before, stretches all credulity. Equally meritless is the idea that Truisfruit might similarly avoid jurisdiction here, even though the fraud perpetrated upon NYKCool by way of the fraudulent transfer of the Bonita business to Truisfruit was accomplished, and had the majority of consequences occur, in New York.

But once again, the thorough Report and Recommendation on this question, as well as the Order adopting it, are before the Court and barely attempted to be met by Truisfruit. The district court has already ably analyzed the record and law at length and ruled upon the personal jurisdiction issue, though Truisfruit, lacking an answer, has chosen not to even address the Court's reasoning and salient facts underlying it. (A.170-83; A.267).

The proffered Castillo affidavit was said to be true as of October 2013, not

29

after that date, but curiously fails to identify how long Mr. Castillo has worked at Truisfruit or been its President. More telling is the fact that he claims "no goods or services are provided to the U.S.", while Truisfruit's papers claim the attached cargo of Bonita bananas was its property. <u>Compare</u> A.280 at ¶ 16 <u>with</u> A.342-45. Paragraph 18 Of the Castillo affidavit conveniently then conditions the prior comprehensive statement by excluding (1) sales to the former exclusive marketer of Bonita brand fruit in the U.S.A., judgment debtor FIA, and (2) that trifling matter of over 3 million dollars in assigned receivables transferred to it by FIA, after judgment was granted against FIA, but during the 10 day stay period on execution. Those tens of millions of dollars in goods provided by FIA at the Red Hook Terminal in Brooklyn, revenues received thereby, and the assigned receivables for fruit that was also delivered to the Port of New York, are, according to Truisfruit's assessment, not to be considered in the calculus of jurisdiction, for its President's affidavit removes them from the equation.

Likewise, the conflict in the Truisfruit claim that it owned the fruit delivered to Red Hook Terminal, the sale proceeds of which were deposited with the Court by Redifresh, while swearing "Truisfruit provides no goods or services to the U.S.", "Truisfruit S.A. provides no goods or services within the State of New York" and "Truisfruit S.A derives no substantial revenue from any activities within

30

the State of New York" appears lost to it. (A.353; A.280-83, at ¶¶ 16, 29 and 30). The Court is apparently expected to just disregard Truisfruit's business dealings with Redifresh, except when Truisfruit is claiming the proceeds from the sale of its bananas in New York. Of course, if the Court is unwilling to disregard the activity between Truisfruit and FIA, and subsequently with Redifresh, as its cargo broker, the position of Truisfruit on general and specific jurisdiction is worthless.

Similarly, Truisfruit would have the Court ignore the facts that it is an alter-ego of a raft of other judgment debtor Noboa companies, has committed fraud in its New York dealings, e.g. fraudulent transfer of proceeds from sale of Bonita bananas in New York, and the fact that all of the subject claims arise from the breach of contracts of affreightment by alter-ego companies, which contracts call for New York arbitration and U.S. federal maritime law. Truisfruit needs to conjure away all of these factual findings so as to warrant filing the instant appeal. See, e.g., A.179-83. Those established facts, however, cannot be spirited from the case, instead the admitted facts and those the Court is ineptly told to ignore, only re-confirm the propriety of the judgment as to both service and business in the district, respectively, not to mention "principles of comity."

31

**POINT III.    THE ACTION PLAINLY FELL WELL-WITHIN THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION.**

There is no question that subject matter jurisdiction is properly asserted with respect to confirmation and enforcement against alter-egos of arbitration awards pursuant to maritime contracts, such as the contract of affreightment at issue. Under the Federal Arbitration Act, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this *title [9 USCS §§ 10, 11]*. If no court is specified in the agreement of the parties, then such application may be made to the United States District Court in and for the district within which such award was made." 9 U.S.C. § 9. Moreover, federal-question jurisdiction is provided for matters governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("the New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted at 9 U.S.C. § 201 note (West 2004), or the Inter-American Convention on International Commercial Arbitration of January 30, 1975 ("the Inter-American Convention"),

32

O.A.S.T.S. No. 42, reprinted at 9 U.S.C. § 301 note. Chapter Two of the FAA, implementing the New York Convention, provides that "an action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States . . . [and] the district courts of the United States . . . shall have original jurisdiction over such action or proceeding, regardless of the amount in controversy," 9 U.S.C. § 203, and also provides for removal to federal court "where the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. Chapter Three of the FAA, implementing the Inter-American Convention, makes the original-jurisdiction and removal provisions of Chapter Two applicable to that Convention as well. 9 U.S.C. § 302 (stating that 9 U.S.C. §§ 202-205, and § 207, "shall apply to this chapter as if specifically set forth herein, except that for purposes of this chapter 'the Convention' shall mean the Inter-American Convention"). As a general matter, the Conventions are enforceable in United States courts where, as here, a written agreement purportedly exists that provides for arbitration in the United States (or another signatory nation), as long as the commercial scope of the subject matter is "not entirely domestic." See 9 U.S.C. §§ 201-202, 301-302; Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999); Productos Mercantiles E Industriales,

33

S.A. v. Faberge USA, 23 F.3d 41, 44-45 (2d Cir. 1994).

And, as to the underlying dispute, at least since Norfolk S. Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004), the scope of an agreement need not be purely maritime in order to qualify as a "maritime contract." "Thus, contrary to at least the terms of this Court's jurisprudence, the Supreme Court exercised admiralty jurisdiction over a contract with non-maritime components deemed to be *more* than 'incidental.'" Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 315, 2005 A.M.C. 1747 (2d Cir. 2005). Now, in a more relaxed approach, "courts are required to 'look to the contract's 'nature and character' to see 'whether it has 'reference to maritime service or maritime transactions.'" Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., No. 07 Civ. 5798 (CM), 2007 U.S. Dist. LEXIS 74477, *10 (Oct. 1, 2007) (quoting Folksamerica, 413 F.3d at 311 (quoting Kirby, 543 U.S. at 24 (quoting Northern Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125, 39 S. Ct. 221, 63 L. Ed. 510 (1919))). As alter-egos are considered to be one-and-the-same as the party signing the maritime contract, such claims against alleged alter-egos in the context of proceedings brought pursuant to the FAA have been repeatedly held to fall within the court's subject matter jurisdiction, accordingly. See, e.g., Wilhelmsen Premier Marine Fuels AS v. Sa. Independent Liner Serv. Pty

34

<u>Ltd.</u>, No. 08 Civ. 8878 (LTS), 2009 WL 666773 (S.D.N.Y. Mar. 6, 2009);

<u>Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.</u>, No. 87 Civ. 1320 (SWK), 79

B.R. 534, 538-39, 1988 A.M.C. 1487 (S.D. N.Y. 1987).

Moreover, knowing it was unable to convince any Court of excusable neglect, lack of prejudice, and a meritorious defense, Truisfruit in its papers below represented nothing beyond still more inartful gamesmanship, to wit: an effort to justify otherwise unavailable relief by spinning and recasting the same tired arguments into grounds for a Rule 60(b)(4) "voidness" vacatur. Once one gets past the boiler-plate contained in Truisfruit's papers, the near-risible crux of the arguments becomes painfully clear. Truisfruit continues to assert lack of personal and subject matter jurisdiction, not for any new or over-looked reason, but because the pleadings and evidence fail to state claims of RICO and/or alter-ego liability necessary to support the exercise of jurisdiction. Of course, simply re-styling an attack on the sufficiency of the pleadings and merits findings (all ruled upon already by way of Rule 12(b)(6) and Rule 56 motions) as an attack on "jurisdiction" surely does not somehow convert the argument into anything of the sort. (A.595; A.599). It is not merely "putting the cart before the horse;" it is a paradigmatic example of "circular" logic, if not just sorry effort to repackage a broken argument. Rule 60(b) was never designed to support such an overt fallacy.

35

**POINT IV.**     **THE DISTRICT COURT WAS READILY EMPOWERED TO ALLOW EXECUTION UPON TRUISFRUIT'S PROPERTY WITHIN NEW YORK.**

And, as a general matter, a "'federal court's interest in orderly, expeditious proceedings,' Hutto v. Finney, 437 U.S. [678, 696, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)], justifies any reasonable action taken by the court to secure compliance with its orders." Gates v. Collier, 616 F.2d 1268, 1271 (5th Cir. 1980); see also, Berger v. Heckler, 771 F.2d 1556 (2d Cir. 1985).

The district court was surely vested with authority under New York law to direct that the presumptively, indeed conclusively, fraudulent transfers be set aside and turned over to the Marshal. See, generally, Fed. R. Civ. P. 69; JSC Foreign Economic Ass'n Technostroyexport v. International Dev. and Trade Serv's, Inc., 295 F. Supp. 2d 366, 379-384 (S.D.N.Y. 2003) (discussing judgment creditors' remedies pursuant to Sections 273-a and 276-a of New York's Debtor and Creditor Law, as well as Section 720 of New York's Business Corporation Law); see also, Miller v. Doniger, 28 A.D.2d 405, 814 N.Y.S.2d 141 (1st Dep't 2006); Solow v. Domestic Stone Erectors, Inc., 269 A.D.2d 199, 703 N.Y.S.2d 94 (1st Dep't 2000).

And, in acting to bring a noncompliant party into compliance with a prior order, the district courts have adopted a variety of approaches, often exercising its injunctive powers and the resulting ability to hold violators in contempt. See,

36

generally, Spain v. Mountanos, 690 F.2d 742, 746 (9th Cir. 1982); Gary W. v. Louisiana, 622 F.2d 804, 806-807 (5th Cir. 1980), cert. denied, 450 U.S. 994, 101 S. Ct. 1695, 68 L. Ed. 2d 193 (1981); Rodriguez v. Swank, 496 F.2d 1110, 1111-12 (7th Cir.), cert. denied, 419 U.S. 885, 95 S. Ct. 151, 42 L. Ed. 2d 125 (1974); Cole v. Hills, 396 F. Supp. 1235, 1238-39 (D.D.C. 1975); Mims v. Duval County School Bd., 350 F. Supp. 553, 554 (M.D. Fla. 1972); see also, McComb v. Jacksonville Paper Co., 336 U.S. 187, 193, 93 L. Ed. 599, 69 S. Ct. 497 (1949); Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 56-57 (2d Cir.), cert. denied, 459 U.S. 832, 74 L. Ed. 2d 71, 103 S. Ct. 73 (1982) (a court has broad discretion to fashion an order to coerce compliance with a prior judgment); Fortin v. Comm'r of the Mass. Dep't of Public Welfare, 692 F.2d 790, 797-98 (1st Cir. 1982).

Indeed, in enforcing its orders, a district court may take such steps as are appropriate given the resistance of the noncompliant party. See, Madden v. Grain Elevator, Flour and Feed Mill Workers, Local 418, 334 F.2d 1014, 1020 (7th Cir. 1964), cert. denied, 379 U.S. 967, 85 S. Ct. 661, 13 L. Ed. 2d 560 (1965). Where "a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1,

37

15, 28 L. Ed. 2d 554, 91 S. Ct. 1267 (1971). And ensuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt. <u>Alexander v. Hill</u>, 707 F.2d 780, 783 (4th Cir. 1983), <u>cert. denied sub nom.</u>, <u>Syria v. Alexander</u>, 464 U.S. 874, 104 S. Ct. 206, 78 L. Ed. 2d 183 (1983); <u>sea also</u>, <u>Class v. Norton</u>, 376 F. Supp. 496, 501 (D. Conn.) ("Continued non compliance cannot and will not be tolerated, and I find it necessary to draw on the ' broad discretionary power' of the trial court to fashion equitable remedies which are 'a special blend of what is necessary, what is fair, and what is workable.'") (quoting <u>Lemon v. Kurtzman</u>, 411 U.S. 192, 200, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973) (citations omitted), <u>aff'd in part and rev'd in part on other grounds</u>, 505 F.2d 123 (2d Cir. 1974).

Accordingly, the Court is further empowered to appoint a receiver to administer and collect the debtors' interests to the extent necessary to satisfy the judgment. Fed. R. Civ. P. 64; N.Y. Civ. Prac. L. & R. 5228; <u>see also, generally</u>, <u>Ross v. Thomas</u>, No. 09 Civ. 5631 (SAS), 2011 WL 2207550, **1-2 (S.D.N.Y. Jun. 6, 2011).

And, especially if a showing is made that assets are being alienated in an effort to defraud creditors, the district court, in its vast discretion to see the judgment satisfied, is also empowered to issue both pre-judgment and post-judgment

38

injunctions and attachment orders as it may see fit. Fed. R. Civ. P. 64; Fed. R. Civ. P. 65; Fed. R. Civ. P. 69; N.Y. Civ. Prac. L. & R. 5229; N.Y. Civ. Prac. L. & R. 6201; N.Y. Civ. Prac. L. & R. 6212; <u>see also, generally</u>, <u>Loew v. Kolb</u>, No. 03 Civ. 5064 (RCC), 2003 WL 22077454, *2 (S.D.N.Y. Sep. 8, 2003); <u>Sequa Corp. v. Gelmin</u>, No. 91 Civ. 8675 (DAB), 1995 WL 404726, **3-4 (S.D.N.Y. Jul. 7, 1995).

The egregious record evidence of the defendants' fraudulent intent to defraud creditors and undermine the district court's judgments, twice affirmed by this Court, is, by now certainly, well-established. <u>See, generally</u>, A.159. The Bonita business in the United States, as elsewhere, has always been controlled by Noboa through various corporate shills, of which Truisfruit is just the latest successor. Noboa has not hesitated to exploit the corporate form to avoid the judgments of this and other courts. Indeed, these facts have been effectively conceded in prior hearings and testimony.

And the relief sought by the underlying order to show cause was no different than that already afforded, and allowed to continue upon preliminary review, against the Noboa alter-ego companies already before the district court as party defendants. The district court did nothing other than utilize the Federal Rules and the powers granted to the courts for their intended purpose, and upon support rarely capable of being so overwhelmingly demonstrated. Rather than being a "step behind" Noboa's shenanigans, the temporary restraining order and other requested relief as against

39

Truisfruit, without prior notice, was designed to finally explicitly block further fraudulent transfer of the judgment debtors' commercial assets, i.e. the North American Bonita business, in advance, before the next judgment, no matter which new Noboa alter-ego may arise as the seller of Noboa's Bonita produce to the United States under Noboa's Bonita brand. Indeed, given Noboa's willingness to flout the court's orders and all applicable law, only when the fundamental business of trading in the branded goods itself was restrained, irrespective of the particular Noboa company purported to have such rights at any particular time, could there be any hope of finally putting an end to Noboa's shell game.

And the idea that jurisdiction over the res was lacking because Truisfruit was not named as a party defendant when the attachment issued is truly specious, both factually and legally. Even putting aside the unquestionable ability of the district court to issue attachments reaching property held by non-parties, the courts are also empowered to maintain an attachment in place, while allowing a new pleading to be interposed adding the alter-ego or fraudulent transferee of the judgment debtor. See, Helicon Partners, LLC v. Kim's Provision Co., No. 12-01602 (SMB), 2013 WL 1881744, *6 (Bankr. S.D.N.Y. May 6, 2013) (compiling cases).

In addition, under New York law dating back more than 100 years, a court is always empowered to attach fraudulently transferred property. See, Hess v. Hess, 22

40

N.E. 956 (N.Y. 1889); <u>Rinchey v. Dtryker</u>, 28 N.Y. 45, 54 (1863); <u>see also</u>, N.Y. Debt. & Cred. L. § 278 ("Where a conveyance is fraudulent as to a creditor, such creditor, when his claim has matured, may . . . [d]isregard the conveyance and attach or levy execution upon the property conveyed."); <u>Glassman v. Glassman</u>, 131 N.E.2d 721, 724-25 (N.Y. 1956) (title to fraudulently transferred property is only "ostensibly lodged" in the fraudulent transferee, and the creditor is entitled to treat that property as belonging to the debtor-defendant).

Furthermore, the creditor of one alter-ego can attach assets held in the name of the other alter-ego. <u>See, e.g.</u>, <u>Allstate Ins. Co. v. TMR Medibill Inc.</u>, 00 Civ. 0002 (CPS), 2000 WL 34011895, 16 (E.D.N.Y. Jul. 13, 2000) (allowing attachment of non-party's assets, because plaintiffs made sufficient showing regarding reverse corporate veil-piercing claim); <u>Worldwide Carriers, Ltd. v. Aris S.S. Co.</u>, 301 F. Supp. 64, 67-68 (S.D.N.Y. 1968) (allowing attachment of property held by third-party on the basis of alter-ego theory, because plaintiff made out at least a <u>prima facie</u> case.).

Given the pattern of fraudulent transfers which was and is beyond cavil in this case and the vast powers vested in the district court to put a stop to it, the entirety of the judgment debtors' local Bonita business was attached, upon papers specifically detailing the defendants' efforts to transfer the business to Truisfruit. That attachment

41

was challenged and passed muster with no less than three district court judges. (A.80-86).

As noted in the Report and Recommendation, this key business asset was merely shifting among alter-egos, so all of those alter-egos and all of their property were always subject to the Court's jurisdiction to the same extent. (A.184-88).

Furthermore, Truisfruit was simultaneously joined as party defendant by way of order to show cause, and the accounts receivable held by the third-party garnishee were only thereafter turned over to the Court's registry, and on consent. Id.

And the above notwithstanding, especially in light of the district court's prior writings, and two affirmances by the Court, it should hardly need to be mentioned again that, jurisdictionally or otherwise, Truisfruit cannot in this fashion engage in a corporate shell game to assume the assets of, and undermine the judgment against, a sister company and simultaneously expect to use its corporate form as a shield against the consequences. All alter-egos, whether then technically named as parties or not, had an interest in the same property equally.

42

## CONCLUSION

WHEREFORE, NYKCool urges the Court to affirm the district court's order and grant to NYKCool such other and further relief as this Honorable Court may deem just and proper.

Dated:     New York, New York
           December 2, 2014

                                  Respectfully submitted,

                                  MAHONEY & KEANE, LLP
                                  Attorneys for Plaintiff-Appellee
                                  NYKCOOL A.B.


                         By:      /S/ Garth S. Wolfson, Esq.
                                  Garth S. Wolfson / Edward A. Keane
                                  40 Worth Street, Tenth Floor
                                  New York, New York 10013
                                  (212) 385-1422

43

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Garth S. Wolfson, do hereby certify that the foregoing brief contains 11,387 words in 14-Point Times New Roman format and, therefore, complies with Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure.

<u>/S/ Garth S. Wolfson, Esq.</u>
Garth S. Wolfson

44